**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VANESSA TIMBERLAKE-CAMPBELL, | |
| Plaintiff, | No. 24 CV 3322 |
| v. | Judge Manish S. Shah |
| MOMENCE MEADOWS NURSING AND REHABILITATION CENTER, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vanessa Timberlake-Campbell filed this lawsuit against her former employer, defendant Momence Meadows Nursing and Rehabilitation Center, LLC, for employment discrimination and retaliation based on race, sex, and disability. Momence Meadows moves to dismiss under Rule 12(b)(3) for improper venue, or, in the alternative, to transfer the case to the Central District of Illinois pursuant to 28 U.S.C. § 1404. The motion is granted, and the case is transferred to the Central District of Illinois.

## I.    Legal Standards

A party may move under Rule 12(b)(3) for dismissal of an action filed in an improper venue. Fed. R. Civ. P. 12(b)(3). The plaintiff bears the burden of proving that venue is proper. *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F.Supp.2d 781, 787 (N.D. Ill. 2013) (citing *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981)). A court reviewing a Rule 12(b)(3) motion to dismiss accepts all facts alleged in the complaint as true, unless contradicted by an affidavit. *Deb v.*

*SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016). A court "may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for its decision." *Id.* If venue is improper, a court may, in the interest of justice, transfer a case to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

## II.    Background

Vanessa Timberlake-Campbell, an African American woman, was hired by Momence Meadows as a patient care nurse. [1] ¶ 11, 17.[1] Momence Meadows operates one facility in Momence, Illinois, which is in Kankakee County. [11-2] ¶¶ 2–3, 12. Timberlake-Campbell experienced harassment and physical assaults by several patients, many of whom had intellectual disabilities requiring specialized care. [1] ¶ 15, 17–19. One patient frequently called Timberlake-Campbell racial slurs. [1] ¶ 24. Timberlake-Campbell informed then-Director of Nursing Frances Guyton-Ward, but no action was taken. [1] ¶ 24. One day, while Timberlake-Campbell was giving the patient his medication, the patient yelled, "I'm tired of these [racial slur]," referred to Timberlake-Campbell as a "beast" and called Timberlake-Campbell "profane words based on her sex." [1] ¶ 25. The patient jumped up and came toward Timberlake-Campbell in a way that made her fear imminent harm. [1] ¶ 25. Timberlake-Campbell told Guyton-Ward what happened and said she feared for her

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

physical safety, but Guyton-Ward ignored her concerns. [1] ¶ 26. Timberlake-Campbell continued to care for this patient. [1] ¶ 26.

Soon after this incident, the same patient physically attacked Timberlake-Campbell, and another nurse had to intervene to stop the assault. [1] ¶ 27. Momence Meadows took no action to reassign the patient to another nurse or floor and failed to provide any training to Timberlake-Campbell on how to safely handle patient confrontations. [1] ¶ 28.

A second patient repeatedly called Timberlake-Campbell racial slurs and made derogatory comments based on her sex. [1] ¶ 29. One day, Timberlake-Campbell found this patient lying on the floor, and attempted to help him get back into his bed. [1] ¶ 30. The patient sat up and began punching Timberlake-Campbell repeatedly. [1] ¶ 30. Timberlake-Campbell reported the attack to management, who again failed to intervene in any way. [1] ¶ 31.

A third patient hit Timberlake-Campbell when she stepped in to stop him from attacking another female patient. [1] ¶ 37. Timberlake-Campbell reported this attack to Guyton-Ward. [1] ¶ 38. Again, there were no actions taken in response. [1] ¶ 40.

A fourth patient came up behind Timberlake-Campbell as she was cleaning a medical cart and pantomimed sex acts toward her. [1] ¶ 42–43. Timberlake-Campbell reported this incident to Guyton-Ward and the Ward and Facility Director, who told her she was in "[the patient's] house" and "she better get used to it." [1] ¶ 21, 44–45. Momence Meadows took no action in response to Timberlake-Campbell's complaint. [1] ¶ 46. About a week later, this same patient walked down a hall—one he did not

live in—where Timberlake-Campbell was working. [1] ¶ 48. Timberlake-Campbell called the Ward and Facility Director for help, but he did not answer. [1] ¶ 49. Because she was afraid of being assaulted, Timberlake-Campbell called the police and filed a report against the patient. [1] ¶ 49. Guyton-Ward found out about the report and reprimanded Timberlake-Campbell for going to the police. [1] ¶ 50.

The day after this incident, Timberlake-Campbell went to the hospital with severe stress-related symptoms that she attributes to the toxic work environment at Momence Meadows. [1] ¶ 51. In response, Momence Meadows asked Timberlake-Campbell for a note that said she was "physically, mentally, and emotionally able to perform her duties." [1] ¶ 52.

At a staff meeting for recent hires, Timberlake-Campbell asked the Momence Meadows human resources representative whether the workplace rules applied to patients as well as employees, as she had experienced assaults and harassment by patients. [1] ¶ 32–33.[2] The HR representative asked Timberlake-Campbell whether she had been called racial slurs by patients in prior employment. [1] ¶ 34. Timberlake-Campbell believed this was an attempt to minimize the abuse she suffered and implied that sexism and racism in the workplace are common and expected. [1] ¶ 34–35. When Timberlake-Campbell pointed this out, the HR representative refused to address the issue any further. [1] ¶ 35–36.

---

[2] At some later point, HR told Timberlake-Campbell that Momence Meadows could not do anything unless an employee was the person harassing her. [1] ¶ 54.

Timberlake-Campbell has rheumatoid arthritis and has trouble standing or walking for long periods of time. [1] ¶ 57. She has been issued a placard for handicap parking, but other nurses confronted Timberlake-Campbell, accusing her of "faking a disability" and threatening to "call the ADA." [1] ¶ 60. Timberlake-Campbell reported the incident to HR, who did not address the situation. [1] ¶ 61.

Eventually, Momence Meadows no longer scheduled Timberlake-Campbell for work, "effectively terminat[ing]" Timberlake-Campbell from employment. [1] ¶ 66–67.

## III.    Analysis

Timberlake-Campbell filed suit in the Northern District of Illinois. Momence Meadows argues that venue is not proper here, and moves to dismiss the complaint or, in the alternative, have it transferred to the Central District of Illinois.

Venue is proper in, as relevant: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," or (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)–(2). Venue may be proper in multiple districts. *See* 28 U.S.C. § 1391(b); *Harlem Ambassadors Prods., Inc. v. ULTD Ent. LLC*, 281 F.Supp.3d 689, 697 (N.D. Ill. 2017).

### A.    § 1391(b)(1)

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  A corporate defendant is deemed to reside "in any judicial district in

which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). If a state (like Illinois) has more than one judicial district, and a corporate defendant is subject to personal jurisdiction in that state, "such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d).

In a federal question case, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020) (quoting *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex*, 623 F.3d 440, 443 (7th Cir. 2010)). The Illinois long-arm statute confers personal jurisdiction if "permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). The Illinois long-arm statute is "coextensive with the Federal Constitution's Due Process Clause." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020); *see also Mobile Anesthesiologists Chi.*, 623 F.3d at 443 (noting that "there is no operative difference" between the Illinois and United States Constitutions for purposes of limiting personal jurisdiction). The question is whether exercising personal jurisdiction on defendants "comports with the limits imposed by federal due process." *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

Federal due process requires that the defendant have minimum contacts with the forum district "such that the maintenance of the suit does not offend 'traditional

6

notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). These "minimum contacts" fall into two categories: "specific" and "general" jurisdiction. *Curry*, 949 F.3d at 395 & n.34. General jurisdiction requires the "defendant's connection to the forum" district be "so 'continuous and systematic' as to render [it] essentially at home." *J.S.T. Corp.*, 965 F.3d at 575 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quoting *Goodyear*, 564 U.S. at 919).

Timberlake-Campbell asserts both specific and general jurisdiction.[3]

1.   *Specific Jurisdiction*

Specific jurisdiction "focuses on the sufficiency of the defendant's contacts with the forum that 'also give rise to the liabilities sued on.'" *Curry*, 949 F.3d at 395 (quoting *Int'l Shoe*, 326 U.S. at 317). Specific jurisdiction analyzes the connection between the defendant, the forum, and the underlying controversy. *Id.* at 395–96. The defendant's "suit-related conduct must create a substantial connection with the forum" district. *Walden*, 571 U.S. at 284. It is a "defendant-focused" inquiry. *See id.* Jurisdiction is proper when the defendant "take[s] 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum

---

[3] Timberlake-Campbell does not specifically say "specific" or "general" jurisdiction but asserts that "part of Defendant's discrimination occurred in this district," [16] at 4, which I take to assert specific jurisdiction. She also says that defendant conducts "usual and customary business" in this district, and that its registered agent and at least one manager resides in this district, [16] at 7, which I take to assert general jurisdiction.

state." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)

(quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 475–76 (1985). The "minimum contacts" analysis requires

courts to look at "the defendant's contacts with the forum [district] itself, not the

defendant's contacts with persons who reside there." *Curry*, 949 F.3d at 397 (quoting

*Walden*, 571 U.S. at 285). "It is the defendant's conduct that must form the necessary

connection with the forum [district] that is the basis for its jurisdiction over him."

*Walden*, 571 U.S. at 285. In other words, there must be "an affiliation between the

forum and the underlying controversy, principally, [an] activity or an occurrence that

takes place in the forum [district]." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,*

*San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 919).

This is true even in cases of intentional torts. *Walden*, 571 U.S. at 286. The exercise

of jurisdiction over an "intentional tortfeasor must be based on intentional conduct

by the defendant that creates the necessary contacts with the forum." *Id.* "[M]ere

injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290.

There are three elements that must be met for the court to exercise specific

jurisdiction: "(1) the defendant must have purposefully availed himself of the

privilege of conducting business in the forum state or purposefully directed his

activities at the state, (2) the alleged injury must have arisen from the defendant's

forum-related activities, and (3) the exercise of jurisdiction must comport with

traditional notions of fair play and substantial justice." *Felland v. Clifton,* 682 F.3d 665, 673 (7th Cir.2012) (citations omitted).

Timberlake-Campbell's claims center on harassment and retaliation she experienced at a facility in Momence, in the Central District of Illinois. She asserts that part of Defendant's discrimination, namely, text message exchanges regarding the assaults and harassment she faced, may have been sent in this district. [16] at 4–5. Timberlake-Campbell attaches three of these exchanges as exhibits to her complaint, [1-1] at 10–22, 42–45, and claims that "[r]easonable inferences can be drawn that due to Momence Meadows' geographical proximity to Will County, Illinois, those conversations and decisions could have easily occurred in this district." [16] at 5. Will County is in the Northern District of Illinois. 28 U.S.C. § 93(a).

Timberlake-Campbell cannot show *Felland*'s second element, that the injury arose from Momence Meadows's forum-related activities, because there is no support for the inference that these conversations occurred in this district. Timberlake-Campbell asks the court to draw an inference based on the mere proximity of Momence Meadows to Will County. But there is nothing concrete to tie the messages to this district.

The first text conversation (between Guyton-Ward and Timberlake-Campbell) and third conversation (between "Ben Administrator" and Timberlake-Campbell) have no identifiable locations for either sent or received messages. [1-1] at 10–15, 42–45. The second conversation mentions that Guyton-Ward was in church when Timberlake-Campbell texted her. [1-1] at 19. When Guyton-Ward responded to

Timberlake-Campbell a few hours later, nothing indicates where she was. [1-1] at 16–22. There is nothing from which to infer that any of these conversations occurred within the Northern District of Illinois. Any connection between these conversations and this district is speculative.

Because Timberlake-Campbell has not established that there is a "substantial connection" between Momence Meadows's "suit-related conduct" and the Northern District of Illinois, I cannot exercise specific jurisdiction over Momence Meadows. *Walden*, 571 U.S. at 284. Timberlake-Campbell cannot rely on specific jurisdiction to establish proper venue under § 1391(b)(1).

### 2.    *General Jurisdiction*

Unlike specific jurisdiction, a "court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different" district. *Bristol-Myers Squibb*, 582 U.S. at 262 (emphasis in original). "Only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction." *Ford Motor Co.*, 592 U.S. at 358 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). A court can only exercise general jurisdiction when a defendant is "essentially at home" in the district. *Id.* The defendant must have "continuous and systematic general business contacts" with the forum district, and "such extensive contacts with the [forum] state that [the defendant] can be treated as present in the state for essentially all purposes." *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425–26 (7th Cir. 2010); *see also Daimler*, 571 U.S. at 133

10

n.11 (noting that for general jurisdiction to exist, the corporation's affiliation with the forum state must be "comparable to a domestic enterprise in that State").

Timberlake-Campbell alleges that Momence Meadows has a registered agent and at least one manager who resides in this district. [16] at 6–7. She also asserts that "it is likely that multiple employees reside in this District, and that in the year 2024 some of them are doing business remotely." [16] at 7. According to Timberlake-Campbell, this would constitute an "other office," supporting the conclusion that Momence Meadows is conducting business continuously in this district. [16] at 6–7. The case Timberlake-Campbell cites, *Corral v. Mervis Indus., Inc.*, 217 Ill.2d 144 (2005) does not support her contention. In that case, although the defendant argued that a single home office was not a basis to deny a motion to transfer venue and the courts ultimately affirmed the denial, the Illinois Supreme Court said that the factual basis for the denial was not in the record. *Id.* at 155–57. It made "no pronouncement" on the appellate court's conclusion that venue was proper based on the defendant's "other office." *Id.* at 157.

But even if an employee working from home in this district was an "other office" for the purpose of determining whether Momence Meadows conducted business in this district, that would not make Momence Meadows "at home" in the Northern District of Illinois. "A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20. In most cases, a corporation only resides in the state of its incorporation and its principal place of business. *See id.* at 136–39. In some "exceptional" cases, "a corporation's operations

11

in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19. There is no such showing here. A few employees working from home does not make Momence Meadows essentially a domestic corporation within the Northern District.

Moreover, Timberlake-Campbell has failed to specify any employee who resides and works in this district remotely. Like with her specific jurisdiction claim, the inference she asks the court to make is based on speculation and cannot reach the standard necessary to exercise general jurisdiction. Similarly, although Timberlake-Campbell has identified a manager who resides in this district, she has not alleged that the manager *works* in this district. Hiring someone who lives in this district as a manager does not establish that the defendant is doing business in this district.

Finally, registering to do business in a state or designating a registered agent for service of process is not enough to make a corporation "at home" in a state. *See Leibovitch v. Islamic Republic of Iran*, 188 F.Supp.3d 734, 749 (N.D. Ill. 2016) (collecting cases); *see also, e.g.*, *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990) ("Registering to do business is a necessary precursor to engaging in business activities in the forum state," and that, "standing alone" does not satisfy "the demands of due process" necessary to assert personal jurisdiction.). The Illinois courts have similarly held that the "designation of an Illinois registered agent is not an independently determinative factor, however, in determining whether a foreign corporation is doing business in Illinois." *Alderson v. Southern Co.*, 321 Ill.App.3d

832, 853 (1st Dist. 2001). The standard for general jurisdiction as set forth in *Daimler* does not allow for general jurisdiction where only an agent sits; Timberlake-Campbell needed to show that Momence Meadows was "at home" in this district. She has not done so. I cannot exercise general jurisdiction over Momence Meadows.

Momence Meadows does not reside in the Northern District of Illinois, so venue cannot be based on § 1391(b)(1).

**B.     § 1391(b)(2)**

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Although this does not mean most of the events must be in the district, the claims must have substantial ties to the district for venue to be proper. *Ford-Reyes v. Progressive Funeral Home*, 418 F.Supp.3d 286, 290 (N.D. Ill. 2019). To be "substantial," it is enough to establish that the events that took place in the district were "part of the historical predicate for the instant suit." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F.Supp.3d 870, 877 (N.D. Ill. 2015) (internal quotations omitted); *Master Tech. Prods., Inc. v. Smith,* 181 F.Supp.2d 910, 914 (N.D. Ill. 2002). If communications have a close enough relationship to the cause of action, they may establish venue. *Allstate*, 80 F.Supp.3d at 877. But if phone conversations were not part of the conduct underlying the claim, and are only incidental to the claim, they are not enough to establish venue. *Master Tech*, 181 F.Supp.2d at 913.

Timberlake-Campbell says that text message conversations regarding her complaints and disciplinary actions took place when Momence Meadows's managers

13

were "in church, or located off-premises." [16] at 5; [1-1] at 10–22, 42–45. Timberlake-Campbell argues that "[r]easonable inferences can be drawn that due to Momence Meadows' geographical proximity to Will County, Illinois, those conversations and decisions could have easily occurred in this district." [16] at 5. As with the specific jurisdiction analysis, however, Timberlake-Campbell that inference is just a guess. None of the three conversations had identifiable locations. Without information about the locations, there is nothing to establish that any events took place in the district. *Allstate*, 80 F.Supp.3d at 877. Absent any events occurring in the district, Timberlake-Campbell cannot show "substantial ties" between the claim and this district. *Ford-Reyes*, 418 F.Supp.3d at 290. Timberlake-Campbell has also not claimed that any of the underlying assaults or harassment took place here. There is nothing to show that a "substantial" portion of the events giving rise to this claim occurred in this district. Venue is not proper under § 1391(b)(2).

###     C.     Transfer to the Central District of Illinois

After finding venue improper, the court may, in the interest of justice, transfer a case to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Venue is proper in the Central District of Illinois under § 1391(b)(1) because the Central District of Illinois would have personal jurisdiction over Momence Meadows. Its principal place of business is in Momence, Illinois, which is in Kankakee County. *See* 28 U.S.C. § 93(b) (defining the Central District of Illinois to include Kankakee County). A corporation is subject to personal jurisdiction in its place of incorporation and principal place of business. *Ford Motor Co.*, 592 U.S. at

359.[4] Because Momence Meadows's principal place of business is in the Central District of Illinois, it is subject to personal jurisdiction there, and venue would be proper under § 1391(b)(1).

A substantial portion of the events occurred in the Central District of Illinois. 28 U.S.C. § 1391(b)(2). The alleged discrimination and harassment happened at Momence Meadows's facility in Momence. These events undoubtedly were part of the "historical predicate" for the suit. *Allstate*, 80 F.Supp.3d at 877. Venue is also proper under § 1391(b)(2).

Transfer is "ordinarily in the interest of justice because dismissal of an action that could be brought elsewhere is 'time consuming' and may be 'justice-defeating.'" *Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F.Supp.2d 1052, 1059–60 (N.D. Ill. 2002) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)). Here, there was no evidence Timberlake-Campbell brought this suit in this district for an improper

---

[4] Neither the Supreme Court nor Seventh Circuit has specifically addressed whether limited liability companies are treated like corporations for purposes of general jurisdiction. But the defendant in *Daimler* was a limited liability company, and the Supreme Court used the test as applied to corporations. *Daimler*, 571 U.S. at 123. *See also Frank v. P N K (Lake Charles) LLC*, 947 F.3d 331, 337 n.10 (5th Cir. 2020) (noting that the Fifth Circuit has applied this test to limited liability companies).

purpose, and no purpose would be served by requiring Timberlake-Campbell to start from scratch. *Id.* at 1060. The case should be transferred in the interests of justice.

## IV.     Conclusion

Defendant's motion to dismiss for improper venue, [10], is granted. The case shall be transferred to the Central District of Illinois pursuant to 28 U.S.C. § 1406(a) for further proceedings.

ENTER:

Manish S. Shah
United States District Judge

Date: October 29, 2024

16